OPINION
{¶ 1} Defendant-appellant appeals the April 5, 2005 Judgment Entry of the Stark County Court of Common Pleas classifying him a sexual predator. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE {¶ 2} On September 24, 2004, appellant was indicted on one count each of rape, kidnapping and felonious assault. On March 11, 2005, appellant pled guilty to one count of felonious assault and an amended charge of sexual battery. In return, the State dismissed the kidnapping and rape charges. Following a H.B. 180 hearing, the trial court classified appellant a sexual predator on April 5, 2005.
 {¶ 3} Appellant now appeals, assigning as error:
 {¶ 4} "I. THE TRIAL COURT ERRED IN PERMITTING INADMISSIBLE HEARSAY INTO EVIDENCE THEN RELYING ON SAID UNRELIABLE EVIDENCE IN DETERMINING WHETHER TO CLASSIFY THE DEFENDANT UNDER H.B. 180.
 {¶ 5} "II. THE TRIAL COURT'S CLASSIFICATION OF THE APPELLANT AS A PREDATOR WAS NOT SUPPORTED BY CLEAR AND CONVINCING EVIDENCE."
 I {¶ 6} In his first assignment of error, appellant argues the trial court erred in permitting inadmissible hearsay evidence and relying on the same in determining whether to classify appellant as a sexual predator. We disagree.
 {¶ 7} Initially, we note, the admission or exclusion of evidence lies within the sound discretion of the trial court. The trial court has broad discretion in determining the admissibility of evidence, and unless there is an abuse of discretion, the trial court's decision will not be disturbed. State v. Robb,2000-Ohio-275, 88 Ohio St.3d 59, 69, quoting State v. Sage
(1987), 31 Ohio St.3d 173. In order to find an abuse of discretion, the plaintiff bears the burden of demonstrating the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment.Blakemore v. Blakemore (1983), 5 Ohio St.3d 217.
 {¶ 8} In State v. Cook (1998), 83 Ohio St.3d 404, the Ohio Supreme Court held the Rules of Evidence do not strictly apply to sexual predator determination hearings:
 {¶ 9} "Evid.R. 101(C) excepts application of the Rules of Evidence, including the hearsay rule, from certain proceedings, such as miscellaneous criminal proceedings. Among those listed as specifically excepted from the Rules of Evidence are proceedings for extradition or rendition of fugitives; sentencing; granting or revoking probation; issuance of warrants for arrest, criminal summonses, and search warrants; and proceedings with respect to release on bail or otherwise. Evid.R. 101(C). A sexual predator determination hearing is similar to sentencing or probation hearings where it is well settled that the Rules of Evidence do not strictly apply. A determination hearing does not occur until after the offender has been convicted of the underlying offense. Further, the determination hearing is intended to determine the offender's status, not to determine the guilt or innocence of the offender. Accordingly, we hold that the Ohio Rules of Evidence do not strictly apply to sexual predator determination hearings. Thus, reliable hearsay, such as a presentence investigation report, may be relied upon by the trial judge."
 {¶ 10} Accordingly, pursuant to Cook, the trial court may consider reliable hearsay evidence in determining whether to classify an offender as a sexual predator. In State v. Lee,
(1998), 128 Ohio App. 3d 710 the First District opined:
 {¶ 11} "We see a sexual-predator hearing to be analogous to that which is conducted when an individual found guilty of a crime is sentenced. At the sentencing stage, a court is privileged to entertain statements and receive information that might otherwise be barred as hearsay or under other restrictive provisions of the rules of evidence. Nevertheless, simple notions of due process must apply. A relaxed standard for admissibility of evidence in a sexual-predator hearing cannot be equated with automatic admissibility of any and all materials. The trial court has the discretion to consider all cogent evidence on the issues so long as the evidence satisfies a basic standard of being reliable, substantive, and probative. Hearsay evidence may come within that ambit, the caveat being that it must be reliable.[FN5]
 {¶ 12} "[FN5]. Reliable hearsay has been defined as evidence that, while not comporting with the rules of evidence, has "sufficient indicia of reliability to support its probable accuracy." United States v. Silverman (C.A.6, 1992),976 F.2d 1502, 1513, certiorari denied (1993), 507 U.S. 990,113 S.Ct. 1595, 123 L.Ed.2d 159, quoting United States v. Smith (C.A.6, 1989), 887 F.2d 104, 108. In other words, "[the] evidence is reliable in that there is a reasonable probability that it is true." Our Place, Inc. v. Ohio Liquor Control Comm. (1992),63 Ohio St.3d 570, 572, 589 N.E.2d 1303, 1306. Guarantees of trustworthiness of such evidence include that the evidence affords the `trier of fact a satisfactory basis for evaluating the truth of the prior statement.' Ohio v. Roberts (1980),448 U.S. 56, 73, 100 S.Ct. 2531, 2543, 65 L.Ed.2d 597, 612, quotingMancusi v. Stubbs (1972), 408 U.S. 204, 216, 92 S.Ct. 2308,2314, 33 L.Ed.2d 293, 303-304."
 {¶ 13} At the hearing in this matter, the State presented the testimony of Kelcie Groom and Detective Steve Johnson from the Jackson Township Police Department. Ms. Groom testified, in September, 2004, she had been at a party in Summit County, and had later been assaulted by appellant and forced to have sexual intercourse with him. Detective Johnson investigated the case sub judice involving appellant allegedly assaulting Darlene Bryan in September, 2004.
 {¶ 14} Appellant maintains the trial court improperly permitted Detective Johnson's testimony regarding the case when the alleged victim was present in the courtroom.
 {¶ 15} At the sexual predator classification hearing, Detective Johnson testified:
 {¶ 16} "Q. And through your duties there did you become familiar with the facts giving rise to the charges against Brandon Thomas relating to an incident that occurred on September the 14, ah, involving a Darlene Bryan?
 {¶ 17} "A. Yes, I did.
 {¶ 18} "Q. Okay. You were the primary detective in the case?
 {¶ 19} "A. That is correct.
 {¶ 20} "Q. Through the course of your investigation, ah, you spoke with Darlene; is that correct?
 {¶ 21} "A. That is correct.
 {¶ 22} "Q. Okay. You also investigated other aspects of the case, as the lead investigator, right?
 {¶ 23} "A. Correct.
 {¶ 24} "Q. Okay. You participated in a search of the defendant's home?
 {¶ 25} "A. Correct.
 {¶ 26} "Q. Okay. And you spoke to other witnesses?
 {¶ 27} "A. That is correct.
 {¶ 28} "Q. Did you personally observe the injury to Darlene Bryan?
 {¶ 29} "A. Yes, I did.
 {¶ 30} "Q. Okay. Ah, she had pretty extensive facial injuries or obvious facial injuries, did she not?
 {¶ 31} "A. Yes.
 {¶ 32} "Q. Okay. Were you present when the doctor, ah, at the hospital when the doctor gave any kind of diagnosis as to these injuries?
 {¶ 33} "A. Yes, I was.
 {¶ 34} "Q. As far as whether there were any fractures? And what was your understanding of the injuries?
 {¶ 35} "A. She had a fracture. —
 {¶ 36} "Mr. Pitinii: Objection.
 {¶ 37} "The Court: Overruled.
 {¶ 38} "A. She had a fractured left orbital bone underneath her eye, the collar bone and, ah, there was also, ah another fracture discovered later.
 {¶ 39} "Q. Okay. A jaw fracture?
 {¶ 40} "A. A jaw fracture, correct.
 {¶ 41} "Q. Okay. Were you also made privy to, ah, any of the information obtained, ah, through the sexual assault kit at Mercy Medical when she was transported there for purposes of evaluation by the SANE nurse?
 {¶ 42} "A. Yes.
 {¶ 43} "Q. Okay. And were there injuries, ah, to her regarding a sexual assault?
 {¶ 44} "A. Yes.
 {¶ 45} "Q. Okay. And we're not talking about the same injuries to her face; we're talking about injury to her vagina and areas of that nature?
 {¶ 46} "A. That is correct.
 {¶ 47} "Q. Okay. Through your investigation, um, was alcohol involved in this particular incident?
 {¶ 48} "A. Yes, it was.
 {¶ 49} "Q. Were you able to learn whether or not Brandon Thomas had supplied alcohol to Darlene Bryan?
 {¶ 50} "A. Yes, I did."
 {¶ 51} "* * *
 {¶ 52} "By Ms. Hartnett: Q. So detective, you said you had learned that Brandon Thomas had supplied alcohol to Darlene?
 {¶ 53} "A. Yes, I did.
 {¶ 54} "Q. And what is Darlene's age?
 {¶ 55} "A. Darlene's age is 16 at the time.
 {¶ 56} "Q. Okay. Through your investigation were you able to determine, ah, any particular location off of Greensburg Road that became involved in the incident regarding Darlene Bryan?
 {¶ 57} "A. Yes. Ah, on the north side of the road, ah, on Greensburg Road, approximately 2700 block, there was a grassy area.
 {¶ 58} "Q. Okay. And was that based on descriptions provided to you through witnesses or how did you learn of that location?
 {¶ 59} "A. A Detective Pat Hunt from Summit County had actually contacted me.
 {¶ 60} "Q. Okay. And Detective Pat Hunt is the detective who was assigned in the case in the incident between Brandon Thomas and Kelcie Groom; is that correct?
 {¶ 61} "A. That is correct.
 {¶ 62} "Q. Okay. He had specific knowledge of a location that he learned through investigating his case?
 {¶ 63} "A. Yes, he did.
 {¶ 64} "Q. And did he go there with you?
 {¶ 65} "A. He met me at that location.
 {¶ 66} "Q. Okay. After you found that location, were you able to verify, through your witnesses, whether or not that location had been involved in your case?
 {¶ 67} "A. Yes, I did. Darlene Bryan did respond to that location.
 {¶ 68} "Q. Okay.
 {¶ 69} "A. And confirm that that was the location that she had been at.
 {¶ 70} "Q. Okay. And was there physical evidence obtained from that site?
 {¶ 71} "A. I, I did obtain some evidence, ah, a cigarette pack, empty plastic ice bag.
 {¶ 72} "Q. Okay. Was there also beer, ah, bottle caps and things of that nature relating to alcohol?
 {¶ 73} "A. Yes, there was.
 {¶ 74} "Q. Okay."
 {¶ 75} Tr. at 47-50; 51-53.
 {¶ 76} Upon review of Detective Johnson's testimony, we find the trial court did not abuse its discretion if finding his testimony supported by sufficient indicia of reliability and allowing it as evidence.
 {¶ 77} Appellant further maintains the trial court abused its discretion in permitting Detective Johnson to testify relative to allegations of sexual assault made by two other teenage girls, which did not result in a police report or charges being filed.
 {¶ 78} The following exchange took place at the hearing:
 {¶ 79} "Q. Okay. And you learned that each of these two individuals had reported incidents of non-consensual sexual relations with Brandon Thomas?
 {¶ 80} "A. That is correct.
 {¶ 81} "Q. Okay. Ah, did either of them report that there had been any instances of violence, either connected to, before, during or after these incidents of sex?
 {¶ 82} "A. Yes. Amanda Bartnicki recalled, um, an incident at a McDonald's, where she had been struck in the face by Brandon.
 {¶ 83} "Q. Okay. Did she indicate that she had suffered injury as a result of being struck by him?
 {¶ 84} "The Court: You know, I'm going to stop this line of questioning.
 {¶ 85} "Ms. Hartnett: Okay.
 {¶ 86} "The Court: I'm going to strike the last comment.
 {¶ 87} "Ms. Hartnett: All right.
 {¶ 88} "By Ms. Hartnett: Q. Through what you learned about the, ah, incidents of these other girls, ah, Alexsi and Amanda, were there any similarities as far as the conduct in relation to, um, Darlene's case?
 {¶ 89} "The Court: Counsel approach for a minute.
 {¶ 90} "(A conference was held at the bench outside the hearing of the spectators.)
 {¶ 91} "The Court: I, I don't think you need this.
 {¶ 92} "Ms. Hartnett: Okay.
 {¶ 93} "The Court: I think that, ah, that we're starting to get to an area where I feel uncomfortable as far as reliability and fairness.
 {¶ 94} "Ms. Hartnett: Okay.
 {¶ 95} "The Court: Are you — are you with me here?
 {¶ 96} "Court Reporter: Yes, Your Honor.
 {¶ 97} "The Court: The Court is going to, on its motion, ask the prosecutor to stop this line of questioning. In this case I know that other victims have alleged the same facts and I know through court pleadings that, the names of those individuals. And for my purposes for this hearing, ah, I don't need anything more than it's alleged there have been other victims alleging the same conduct. I don't need to know anything further.
 {¶ 98} "Ms. Hartnett: Thank you, Your honor."
 {¶ 99} Tr. at 54-56.
 {¶ 100} Upon review, we conclude the trial court properly limited its consideration of Detective Johnson's testimony regarding the alleged sexual assaults on these other two teenage girls.
 {¶ 101} Appellant's first assignment of error is overruled.
 II {¶ 102} In the second assignment of error, appellant argues his classification as a sexual predator was not supported by clear and convincing evidence.
 {¶ 103} Section 2950.01(E) defines "sexual predator" as:
 {¶ 104} "(E) "Sexual predator" means a person to whom either of the following applies:
 {¶ 105} (1) The person has been convicted of or pleaded guilty to committing a sexually oriented offense that is not a registration-exempt sexually oriented offense and is likely to engage in the future in one or more sexually oriented offenses.
 {¶ 106} (2) The person has been adjudicated a delinquent child for committing a sexually oriented offense that is not a registration-exempt sexually oriented offense, was fourteen years of age or older at the time of committing the offense, was classified a juvenile offender registrant based on that adjudication, and is likely to engage in the future in one or more sexually oriented offenses."
 {¶ 107} R.C. Section 2950.09(B)(3) sets forth factors for the trial court to consider in determining whether to classify an offender as a sexual predator:
 {¶ 108} "(3) In making a determination under divisions (B)(1) and (4) of this section as to whether an offender or delinquent child is a sexual predator, the judge shall consider all relevant factors, including, but not limited to, all of the following:
 {¶ 109} "(a) The offender's or delinquent child's age;
 {¶ 110} "(b) The offender's or delinquent child's prior criminal or delinquency record regarding all offenses, including, but not limited to, all sexual offenses;
 {¶ 111} "(c) The age of the victim of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made;
 {¶ 112} "(d) Whether the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made involved multiple victims;
 {¶ 113} "(e) Whether the offender or delinquent child used drugs or alcohol to impair the victim of the sexually oriented offense or to prevent the victim from resisting;
 {¶ 114} "(f) If the offender or delinquent child previously has been convicted of or pleaded guilty to, or been adjudicated a delinquent child for committing an act that if committed by an adult would be, a criminal offense, whether the offender or delinquent child completed any sentence or dispositional order imposed for the prior offense or act and, if the prior offense or act was a sex offense or a sexually oriented offense, whether the offender or delinquent child participated in available programs for sexual offenders;
 {¶ 115} "(g) Any mental illness or mental disability of the offender or delinquent child;
 {¶ 116} "(h) The nature of the offender's or delinquent child's sexual conduct, sexual contact, or interaction in a sexual context with the victim of the sexually oriented offense and whether the sexual conduct, sexual contact, or interaction in a sexual context was part of a demonstrated pattern of abuse;
 {¶ 117} "(i) Whether the offender or delinquent child, during the commission of the sexually oriented offense for which sentence is to be imposed or the order of disposition is to be made, displayed cruelty or made one or more threats of cruelty;
 {¶ 118} "(j) Any additional behavioral characteristics that contribute to the offender's or delinquent child's conduct."
 {¶ 119} An offender may be adjudicated a sexual predator if only one or two of the factors set forth in R.C. 2950.09(B)(3) are present, as long as the totality of the circumstances provides clear and convincing evidence he is likely to commit a future sexually oriented offense. State v. Schaub,
2005-Ohio-703.
 {¶ 120} The trial court addressed its findings at the classification hearing:
 {¶ 121} "I will take the testimony of the young lady from Summit County [Ms. Groom] who testified here today, ah, to be extremely reliable and so I find, ah, that to be a most significant factor in this case. Ah, not only would the complaining witness in our case, but also the complaining witness in the Summit County case. Ah, and the similarities of the violence perpetrated on each of those young ladies, under (d), is a significant factor to me.
 {¶ 122} "Ah, I agree with the defense, that the use of alcohol or drugs was probably a mutual decision in both of these instances. This is not a factor with me.
 {¶ 123} "Ah, he has no prior offenses, felony offenses, so there is no prior sex offense, and so that issue, under (f), is not in front of me.
 {¶ 124} "* * *
 {¶ 125} "Ah, I find, under (h), that it is a demonstrated pattern of abuse, that Mr. Thomas engages young ladies in, in a social climate, appears to them to be a nice young man, and then at some point of time in this relationship, ah, shifts into a different personality and a violent individual and, with no regard for, ah, feelings, physical or any type of feeling of the victims in these matters. And so, I find, ah, I find that is of concern to me. In each of these two cases and the cases that, the other case in regard to that which I was going to admit, the defendant, ah, appears to be, ah — want to use the word "normal," because I don't know any other word to use, but person whom, I think one of the victims indicated here, someone you could trust, rely upon. I think he does that purposely, in think he then isolates his victim from other people, not only people at parties, but also any other people that can help them, the fact that it was taken in the field and beaten in a field, away from anybody that could give her help.
 {¶ 126} "* * *
 {¶ 127} "So the Court, ah, in reviewing the Bill of Particulars, that the State of Ohio has filed in this case, and has, that I have filed as an exhibit, the knowledge of the other hearings that I've had in regard to prior and similar acts, based upon the testimony today of the two witnesses called by the State of Ohio, based upon my knowledge of these facts, I find that the defendant, by clear and convincing evidence, that the issues that lead me to my decision are the age of the victim in this particular case, that there are multiple victims in this particular case, that there is a lack of any showing of any mental illness or physical or mental retardation against the offender, that the nature of the offender's special activity with the victim and that his relationship with them and that it was a part of a demonstrated pattern of abuse is a significant factor with me. The display or threaten cruelty is additional factor with me.
 {¶ 128} "So based upon those factors the Court finds by clear and convincing evidence that Mr. Thomas should be classified as a sexual predator, I will so find and I will make that finding and file the necessary paperwork."
 {¶ 129} Tr. at 75-80.
 {¶ 130} Based upon our disposition of appellant's first assignment of error, and the findings of the trial court set forth above, we find appellant's classification as a sexual predator is not against the manifest weight of the evidence. The trial court specifically found there were multiple victims, noting the similarities in the violence perpetrated on each of the young women, and found the evidence demonstrated a pattern of abuse, whereby appellant would engage young women in a social setting, gain their trust and engage in violent behavior. Upon review, the trial court sufficiently set forth its findings in classifying appellant as a sexual predator pursuant to the statute, and the classification is supported by the evidence.
 {¶ 131} Appellant's second assignment of error is overruled.
 {¶ 132} The April 5, 2005 Judgment Entry of the Stark County Court of Common Pleas classifying appellant a sexual predator is affirmed.
Hoffman, J. Gwin, P.J., and Farmer, J., concur.
 JUDGMENT ENTRY
For the reasons stated in our accompanying Memorandum-Opinion, the judgment of the Stark County Court of Common Pleas if affirmed. Costs assessed to appellant.