The STATE of Ohio, Appellee,

v.

BAHNS, Appellant.

[Cite as *State v. Bahns*, 185 Ohio App.3d 805, 2009-Ohio-5525.]

Court of Appeals of Ohio,
Second District, Montgomery County.

No. 22922.

Decided Oct. 16, 2009.

Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Richard Hempfling, for appellant.

---

DONOVAN, Presiding Judge.

{¶ 1} Defendant-appellant, Todd A. Bahns, appeals his conviction and sentence for one count of using deception to obtain drugs, in violation of R.C. 2925.22(A), a felony of the fourth degree.

{¶ 2} On September 6, 2007, Bahns was charged by indictment with one count of using deception to obtain drugs. At his arraignment on September 20, 2007, Bahns waived the reading of the indictment and pleaded not guilty to the charged offense. On October 25, 2007, Bahns filed a motion to suppress incriminating statements that he made to hospital security personnel; however, four days later on October 29, 2007, Bahns withdrew the motion.

{¶ 3} A bench trial was held on June 2 and 3, 2008, after which the court directed the parties to file posttrial memoranda regarding specific issues raised during the trial. In a decision and entry filed on July 10, 2008, the trial court found Bahns guilty of the charged offense. The trial court subsequently sentenced Bahns to five years of community control and suspended his driver's license for six months. Bahns filed a timely notice of appeal with this court on September 3, 2008.

I

{¶ 4} Bahns was employed as a registered nurse assigned to the advanced-care unit ("ACU") at the Miami Valley Hospital ("MVH") from July 2000 until May 16, 2007, when his employment was terminated for allegedly stealing morphine from the hospital for his own personal use. Bahns's theft of the morphine formed the basis of the criminal charge at issue in the instant case.

{¶ 5} The theft was uncovered after an investigation was conducted by Danielle Roberts, an associate nurse manager at MVH, who supervised Bahns. Roberts began her investigation after she became aware of alleged negligent behavior by Bahns in the care of one of his assigned patients. During her investigation, Roberts noted certain suspicious inconsistencies between Bahns's personal documentation of medication that he administered to patients and the computerized reports generated by PYXIS, the machine that contained and dispensed various medications for patients in the hospital. Each floor of the hospital where patients were located contained its own PYXIS machine for use by the nurses who administered the medication.

{¶ 6} Access to the PYXIS machine was carefully monitored, and each transaction was recorded. A nurse using PYXIS was first required to enter his or her user number, as well as a fingerprint, for identification purposes. After initial access was granted, the nurse was required to enter the patient's name and then choose whether to withdraw, return, or dispose of medication.

{¶ 7} The PYXIS machine generated a report for each nurse that contained the following information: (1) the specific station from which the medication was dispensed, (2) the transaction date and time, (3) patient type, (4) medication name, (5) Med. Att. ID, (6) amount of medication withdrawn, and (7) the patient's name.

{¶ 8} When medication was withdrawn from PYXIS for a specific patient, the nurse was required to document that the medication was administered in the medical-administration-record ("MAR") portion of the patient's chart. Documentation on MAR was to be performed immediately after administration of the medication. If the nurse did not document administration of the medication on

MAR, it was assumed that the medication had not been given to the patient. Testimony was adduced during the trial that because of the chaotic and stressful nature of the job, a nurse would sometimes forget to properly document that medication had been administered to a particular patient in his or her MAR report.

{¶ 9} Roberts's investigation concentrated on Bahns's behavior between January 1, 2007, and February 5, 2007. Roberts's investigation established that Bahns's PYXIS report demonstrated that he had withdrawn morphine on January 18, 2007, and January 19, 2007, to be administered to patient S.R. Roberts noted, however, that when she compared Bahns's PYXIS report to S.R.'s MAR, there was no documentation made that the morphine was ever administered to S.R. on either date. Roberts's investigation of Bahns's PYXIS report also uncovered several other instances in which Bahns failed to document the administration of medications to various other patients in their MARs, as well as instances in which Bahns withdrew medication from the PYXIS dispenser without first obtaining an order from a doctor to do so.

{¶ 10} After Roberts reported the results of her investigation to her superiors, Bahns was placed on investigatory suspension on May 5, 2007. On May 16, 2007, Bahns was called to a meeting to discuss the discrepancies between his PYXIS report and the patients' MARs. At the meeting were Roberts, nurse manager Patricia Burnett, human-resources representative Gretchen Long, and security-operations manager LaMark Davis. Davis began the meeting by reading Bahns his *Miranda* warnings. Bahns waived his rights and was immediately shown evidence of the discrepancies. Davis then asked Bahns whether he had been stealing medication. Bahns did not answer the question but rather got up from his chair, walked a short distance, and fainted. Bahns was subsequently taken to the emergency room in the hospital for treatment.

{¶ 11} After Bahns was released from the ER, the questioning resumed. Eventually, Bahns admitted to the group that he had taken the medication for himself. After making a verbal confession, Bahns also provided a written statement in which he confessed that he "need[ed] help," and that he "[had] been diverting drugs." Initially, Bahns wrote, "I have been accused of diverting drugs," in his statement, but later crossed out the words "accused of" so that his written statement would fully comport with his verbal admission to stealing the morphine. Bahns's employment at MVH was immediately terminated, and he was later charged.

{¶ 12} Bahns testified on his own behalf during trial, claiming that his verbal and written statements were not voluntary. Bahns testified that he did not recall making any admissions at the meeting regarding whether he was taking the medication for his own use. Bahns maintained that he confessed to diverting the

medication only because he wanted to avoid further questioning. Bahns further testified that his written statement was coached by Davis.

{¶ 13} After a bench trial, Bahns was convicted of one count of using deception to obtain drugs and sentenced accordingly. It is from this judgment that Bahns now appeals.

## II

{¶ 14} Bahns's first assignment of error is as follows:

{¶ 15} "The trial court erred in basing its finding of guilt on inadmissible hearsay evidence."

{¶ 16} In his first assignment, Bahns contends that Roberts's testimony concerning her investigation into the discrepancies between Bahns's PYXIS report and the MARs was inadmissible because the MARs documents were not introduced as evidence during the trial. Since Roberts's testimony was based upon inadmissible hearsay, Bahns argues that the trial court should not have considered it when it found him guilty of the charged offense.

{¶ 17} Bahns does not dispute that since no opinions or statements were contained in the MARs, those documents are nontestimonial. Thus, the United States Supreme Court's decision in *Crawford v. Washington* (2004), 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177, does not apply to Roberts's testimony regarding the MARs, which fall under the medical-records exception to the hearsay rule.

{¶ 18} Bahns points out that the MARs were not introduced into evidence during the trial. Under normal circumstances, the hearsay rule, Evid.R. 802, and the best-evidence rule, Evid.R. 1002, would act to prohibit a witness from testifying regarding the contents of records that have not been admitted into evidence. *State v. Wilson*, Champaign App. No. 96–CA–22, 1997 WL 666159. "There is no hearsay exception that allows a witness to testify to the contents of business records, in lieu of providing and authenticating the records in question." *State v. Galloway*, Richland App. No. 2003–CA–0086, 2004-Ohio-2273, 2004 WL 986346, citing, *St. Paul Fire & Marine Ins. Co. v. Ohio Fast Freight, Inc.* (1982), 8 Ohio App.3d 155, 8 OBR 213, 456 N.E.2d 551.

{¶ 19} Bahns, however, failed to object to Roberts's hearsay testimony regarding the MAR reports during the trial. Normally, the failure to timely object at trial to allegedly inadmissible evidence waives all claims of error except for plain error. *State v. Santiago*, Franklin App. No. 02AP–1094, 2003-Ohio-2877, 2003 WL 21291025. Moreover, "[w]hen hearsay testimony is admitted without objections, it may properly be considered and given its natural probative effect as if it were in law admissible, the only question being with regard to how much

weight should be given thereto." *State v. Petro* (1947), 148 Ohio St. 473, 500, 36 O.O. 152, 76 N.E.2d 355.

{¶ 20} Bahns asserts that although his counsel did not object to the failure of the state to introduce the MAR reports during Roberts's testimony, he did challenge the admission of the evidence in a Crim.R. 29 motion for acquittal made at the close of the state's case and in a posttrial memorandum filed after the trial was over. Thus, Bahns argues that the issue was preserved for appeal.

{¶ 21} Evid.R. 103(A) provides:

{¶ 22} "Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

{¶ 23} "(1) Objection. In case the ruling is one admitting evidence, *a timely objection or motion to strike* appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context[.]"

{¶ 24} Defense counsel failed to object to the introduction of the information in the MAR reports until the day after Roberts testified when the state had already presented its entire case. In our view, defense counsel's "objection" to the evidence with a Crim.R. 29 motion was untimely and, therefore, insufficient to preserve the issue for appeal.

{¶ 25} Failure to object waives all but plain error. *McBride v. Quebe*, Montgomery App. No. 21310, 2006-Ohio-5128, 2006 WL 2795174. Plain error exists "if the trial outcome would clearly have been different, absent the alleged error in the trial court proceedings." *State v. Rollins*, Clark App. No. 2005–CA–10, 2006-Ohio-5399, 2006 WL 2942123. "[T]o successfully prevail under plain error the substantial rights of the accused must be so adversely affected that the error undermines the 'fairness of the guilt determining process.'" *State v. Ohl* (Nov. 27, 1991), Ashland App. No. CA–976, 1991 WL 274508.

{¶ 26} Bahns's entire defense was premised upon his assertion that he did not steal any medication from the hospital for his personal use but rather that he gave the patient her medication and simply failed to document it properly. Bahns did not claim that the MAR report would have established that he documented the administration of S.R.'s medication. As the trial court found, had Bahns properly objected and demanded that the MAR reports be produced and entered into evidence, his only alternative was to then argue that "what [the records] reflected (or did not reflect) [made] no difference." Thus, the trial court's admission of Roberts's testimony in regard to the contents of the MAR reports was not plain error.

{¶ 27} Bahns's first assignment of error is overruled.

## III

{¶ 28} Bahns's second assignment of error is as follows:

{¶ 29} "Appellant was deprived of the effective assistance of counsel."

{¶ 30} In his final assignment, Bahns argues that he received ineffective assistance because defense counsel failed to immediately object to Roberts's testimony regarding the information revealed by the MAR reports.

{¶ 31} "When considering an allegation of ineffective assistance of counsel, a two-step process is usually employed. First, there must be a determination as to whether there has been a substantial violation of any of defense counsel's essential duties to his client. Next, and analytically separate from the question of whether defendant's Sixth Amendment rights were violated, there must be a determination as to whether the defense was prejudiced by counsel's ineffectiveness." *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, citing *State v. Lytle* (1976), 48 Ohio St.2d 391, 396–397, 2 O.O.3d 495, 358 N.E.2d 623, vacated in part on other grounds (1978), 438 U.S. 910, 98 S.Ct. 3135, 57 L.Ed.2d 1154.

{¶ 32} For a defendant to demonstrate that he has been prejudiced by counsel's deficient performance, the defendant must prove that there exists a reasonable probability that absent counsel's errors, the result of the trial would have been different. *Bradley*, 42 Ohio St.3d at 143, 538 N.E.2d 373. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland v. Washington* (1984), 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674.

{¶ 33} As we have previously found, Bahns's strategy at trial was to establish that he gave S.R. her medication but simply failed to document it properly. Bahns testified that the cause of his failure to document the incident was simple forgetfulness because he was busy at the time, not because he was diverting medication for his own personal use. If Bahns had requested that the MAR reports be produced and admitted at trial, he would have been required to defend against the incriminating evidence in the MAR reports by using the same defense he presented at the bench trial. Trial counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Thompson* (1987), 33 Ohio St.3d 1, 10, 514 N.E.2d 407. Thus, defense counsel's failure to object to the introduction of the information in the MAR reports was a reasonably sound trial strategy given Bahns's theory of the case.

{¶ 34} Bahns's second and final assignment of error is overruled.

IV

{¶ 35} All of Bahns's assignments of error having been overruled, the judgment of the trial court is affirmed.

Judgment affirmed.

BROGAN and FAIN, JJ., concur.