[Cite as *State v. Garrison*, 2018-Ohio-1048.]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Earle E. Wise, Jr., J. |
| -vs- | |
| | Case No. CT2017-0034 |
| STEPHEN M. GARRISON | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Muskingum County Court
                              of Common Pleas, Case No. CR2017-0018


JUDGMENT:                     Affirmed

DATE OF JUDGMENT ENTRY:       March 22, 2018

APPEARANCES:

For Plaintiff-Appellee            For Defendant-Appellant

D. MICHAEL HADDOX                 TONY A. CLYMER
Prosecuting Attorney              1420 Matthias Drive
Muskingum County, Ohio            Columbus, Ohio 43224

By: GERALD V. ANDERSON II
Assistant Prosecuting Attorney
Muskingum County, Ohio
27 North Fifth Street, PO Box 189
Zanesville, Ohio 43702-0189

*Hoffman, J.*

{¶1}   Appellant Stephen M. Garrison appeals the judgment entered by the Muskingum County Common Pleas Court convicting him of aggravated burglary (R.C. 2911.11(A)(1)) and sentencing him to eleven years incarceration.  Appellee is the state of Ohio.

## STATEMENT OF THE FACTS AND CASE

{¶2}   In November of 2016, Appellant was arrested, indicted, and released on bond for the offense of domestic violence against his then-girlfriend, Nikki Dickinson.  As a condition of his bond, he was to have no contact, direct or indirect, with Dickinson.

{¶3}   On January 2, 2017, Appellant appeared at Dickinson's apartment after learning she was dating Ryan Wilt.   When Appellant went to the apartment, Dickinson asked him to leave.  Appellant walked around her, without making physical contact, and went to a bedroom where Wilt was located.  Dickinson got between the two men, pushing Appellant away.  According to Dickinson, Appellant picked up a wooden box of marbles and used the box to strike her in the face.  Dickinson pushed Appellant out and locked the door behind him.  Appellant kicked the door, damaging the frame.

{¶4}   Deputies Brandon Hamilton and Shawn Williams of the Muskingum County Sheriff's Department were dispatched to the scene.  Hamilton spoke to Dickinson, while Williams spoke to another witness, Brian Hohnwald, in a separate room.

{¶5}   Dickinson is hearing impaired, but from past experience Hamilton was able to successfully communicate with her by picking up on her gestures.  While Hamilton interviewed Dickinson, Hohnwald told Williams he witnessed an altercation between

Dickinson and Appellant.  He saw the box of marbles fall to the floor, but he was not sure if the box was used by Appellant to strike Dickinson.  Hohnwald further told Williams Appellant kicked the apartment door.  The officers noted pieces of the door frame laying on the ground and a footprint on the door.  They further observed marbles on the tile floor, along with a broken wooden box.

{¶6}   Hamilton and Williams arrested Appellant for domestic violence.  At the jail, after being read his Miranda rights, Appellant indicated he wished to speak to Hamilton.  Appellant initially stated he went to the apartment to see his children.  He then admitted he found out Wilt and Dickinson were together, and he wanted Wilt to leave with him to speak one-on-one, man-to-man.  Appellant stated he and Wilt were friends, and he wanted to speak to him for "peacekeeping."  Tr. 123.  Appellant admitted Dickinson tried to stop him from going inside.  He denied knowing how the box was damaged and denied kicking the door.  However, he mentioned helping Nikki pick up marbles.

{¶7}   Appellant was indicted by the Muskingum County Grand Jury with one count of aggravated burglary (R.C. 2911.11(A)(1)) and one count of domestic violence (R.C. 2919.25(A)).  The case proceeded to jury trial.  At trial, Appellee presented only the testimony of Deputies Hamilton and Williams.  Appellant was found not guilty of domestic violence, but guilty of aggravated burglary.  The trial court sentenced him to eleven years incarceration, to be served consecutively with the three-year domestic violence sentence in the case for which he had been released on bond during the commission of the instant offense.

{¶8}   It is from the May 10, 2017 judgment of conviction and sentence Appellant prosecutes his appeal, assigning as error:

I. THE TRIAL COURT'S ADMISSION OF TESTIMONIAL HEARSAY AGAINST APPELLANT VIOLATED HIS CONSTITUTIONAL RIGHT TO BE CONFRONTED WITH THE WITNESSES AGAINST HIM AS PROVIDED IN THE SIXTH AMENDMENT TO THE UNITED STATES CONSTITUTION AND SECTION 10, ARTICLE I OF THE OHIO CONSTITUTION.

II. THE APPELLANT WAS DEPRIVED OF THE EFFECTIVE ASSISTANCE OF COUNSEL CONTRARY TO THE STATE AND FEDERAL CONSTITUTIONS.

III. THE GUILTY VERDICT FOR AGGRAVATED BURGLARY AGAINST APPELLANT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND CONTRARY TO LAW.

IV. THE TRIAL COURT PLAINLY ERRED IN IMPOSING THE MAXIMUM CONSECUTIVE SENTENCE FOR APPELLANT'S CONVICTION RENDERING THE SENTENCE CONTRARY TO LAW.

I.

**{¶9}** Appellant argues his Sixth Amendment right to confront witnesses against him was violated by the admission into evidence of statements made by Nikki Dickinson and Brian Hohnwald through the testimony of Deputies Hamilton and Williams.

**{¶10}** Deputy Hamilton testified Dickinson told him Appellant arrived at the residence, and she asked him to leave. He walked around her and entered the apartment. He went to the bedroom where Ryan Wilt was located. Dickinson got between them,

pushing Appellant back. Appellant struck her with a wooden box containing marbles. After she pushed him out the door, Appellant kicked it, damaging the door frame. Appellant objected at the time of this testimony on the basis of hearsay, but not on the basis of a violation of the Confrontation Clause. The trial court overruled the objection and allowed the testimony.

{¶11} On direct examination, Deputy Williams did not testify to any statements made by Hohnwald. On cross-examination, Williams testified Hohnwald said the box of marbles fell to the floor. On re-direct, Williams testified Hohnwald explained he witnessed the altercation between Dickinson and Appellant, but was not sure if Appellant hit Dickinson with the box. Williams further testified Hohnwald told him Appellant kicked the door in. Again, Appellant objected only on the basis of hearsay, and the objection was overruled.

{¶12} After the State rested its case and just prior to making a Crim. R. 29 motion for a directed verdict of acquittal, Appellant objected to the statements made by Dickinson and Hohnwald on the basis of violation of the Confrontation Clause.

{¶13} The Confrontation Clause of the Sixth Amendment to the U.S. Constitution guarantees "[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *." In *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the United States Supreme Court held testimonial statements of a witness who does not appear at trial may not be admitted or used against a criminal defendant unless the declarant is unavailable to testify, and the defendant had a prior opportunity for cross-examination.

{¶14} Confrontation Clause claims not preserved by objection are reviewed for plain error. *State v. Hartman*, 2nd Dist. No. 26609, 2016-Ohio-2883, 64 N.E.3d 519, ¶ 83, appeal not allowed, 146 Ohio St.3d 1515, 2016-Ohio-7199, 60 N.E.3d 7, ¶ 83 (2016). Although Appellant objected on the basis of a Confrontation Clause violation, he failed to do so until after the State had rested its case. Evid. R. 103(A) states:

> (A) Effect of Erroneous Ruling. Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected; and
>
> (1) Objection. In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, stating the specific ground of objection, if the specific ground was not apparent from the context[.]

{¶15} In *State v. Bahns*, 2nd Dist. No. 22922, 185 Ohio App.3d 805, 2009-Ohio-5525, 925 N.E.2d 1025, the defendant failed to object to the introduction of hearsay evidence included in reports until the day after the witness testified, when the state had already presented its entire case. The motion was found to be untimely, and therefore insufficient to preserve the issue for appeal. *Id.* at ¶ 24.

{¶16} Likewise, in the instant case, we find the Confrontation Clause objection to be untimely and insufficient to preserve the issue for appeal. Having presented its case through the testimony of the two deputies without objection, the State was free to release Dickinson and Hohnwald if, in fact, the State had intended to call either witness, or to rest

its case without securing the in-court testimony of either witness. Had counsel raised a timely Confrontation Clause objection, and such objection been sustained, the State would have had the opportunity to attempt to present the testimony of the witnesses in order to give Appellant an opportunity to confront them. We find the objection in the instant case which was made after the State rested to be untimely. Accordingly, Appellant has waived all but plain error.

{¶17} The Ohio Supreme Court has recently clarified the standard of review for plain error:

Crim.R. 52(B) affords appellate courts discretion to correct "[p]lain errors or defects affecting substantial rights" notwithstanding an accused's failure to meet his obligation to bring those errors to the attention of the trial court. However, the accused bears the burden to demonstrate plain error on the record, *State v. Quarterman*, 140 Ohio St.3d 464, 2014–Ohio–4034, 19 N.E.3d 900, ¶ 16, and must show "an error, i.e., a deviation from a legal rule" that constitutes "an 'obvious' defect in the trial proceedings," *State v. Barnes*, 94 Ohio St.3d 21, 27, 759 N.E.2d 1240 (2002).

Even if the error is obvious, it must have affected substantial rights, and "[w]e have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the trial." *Id*. We recently clarified in *State v. Rogers*, 143 Ohio St.3d 385, 2015–Ohio–2459, 38 N.E.3d 860, that the accused is "required to demonstrate a reasonable probability that the error resulted in prejudice—the same deferential

standard for reviewing ineffective assistance of counsel claims." (Emphasis sic.) *Id.* at ¶ 22, citing *United States v. Dominguez Benitez*, 542 U.S. 74, 81–83, 124 S.Ct. 2333, 159 L.Ed.2d 157 (2004).

If the accused shows that the trial court committed plain error affecting the outcome of the proceeding, an appellate court is not required to correct it; we have "admonish[ed] courts to notice plain error 'with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.' " (Emphasis added.) *Barnes* at 27, 759 N.E.2d 1240, quoting *State v. Long*, 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus.

*State v. Thomas*, 2017–Ohio–8011, ¶¶ 32–34.

{¶18} Appellant has not demonstrated a reasonable probability the error affected the outcome of the trial. Had Appellant timely objected, the State would have had the opportunity to present the testimony of Dickinson and Hohnwald. Because we do not know what these witnesses would have testified to had Appellant been given the opportunity to confront them, we are unable conclude on this record the result of the proceeding would have been different had a timely Confrontation Clause objection been raised. Possibly both witnesses would have testified in accordance with their statements as presented through the testimony of Deputies Hamilton and Williams, and the outcome of the trial would have been the same. We find no plain error in the admission of the statements of Dickinson and Hohnwald through the testimony of the deputies.

{¶19} The first assignment of error is overruled.

II.

**{¶20}** In his second assignment of error, Appellant argues his trial counsel was ineffective.

**{¶21}** A properly licensed attorney is presumed competent. *State v. Hamblin*, 37 Ohio St.3d 153, 524 N.E.2d 476 (1988). Therefore, in order to prevail on a claim of ineffective assistance of counsel, Appellant must show counsel's performance fell below an objective standard of reasonable representation and but for counsel's error, the result of the proceedings would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674(1984); *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989). In other words, Appellant must show that counsel's conduct so undermined the proper functioning of the adversarial process the trial cannot be relied upon as having produced a just result. *Id.*

**{¶22}** Appellant first argues in conclusory fashion counsel did not file a motion in limine seeking to limit "statements of witnesses as well as prior bad act evidence known to counsel."  Brief of Appellant, p. 19.  Appellant does not point to specific evidence counsel should have sought to exclude, nor does he argue a legal basis for the exclusion of such evidence.  Accordingly, he has not demonstrated ineffective assistance of counsel in failing to file a motion in limine.

**{¶23}** Next Appellant argues counsel was ineffective in failing to file a motion to suppress statements he made to law enforcement officials.  Deputy Hamilton testified Appellant was advised of his Miranda rights, and then indicated he wished to speak to the deputy.  The record does not establish a legal basis for a motion to suppress, and Appellant has not demonstrated counsel was ineffective in failing to file same.

**{¶24}** Appellant argues counsel never attempted to focus the jury pool's attention on the State's burden of proof and waived opening statement where she could have focused the jury on the State's burden of proof. During jury selection, the prosecutor explained to the jury the State had the burden of proof. Tr. 20. The court instructed the jury regarding the State's burden of proving the offense beyond a reasonable doubt. Tr. 208-209. A jury is presumed to follow the instructions given it by a trial judge. E.g., *State v. Garner*, 74 Ohio St.3d 49, 1995–Ohio–168, 656 N.E.2d 623. Appellant has not demonstrated counsel was ineffective in failing to further emphasize the burden of proof at the start of the trial.

**{¶25}** Appellant argues counsel failed to use peremptory challenges to excuse several jurors who may have been biased. Appellant does not specify which jurors should have been challenged and has therefore not demonstrated ineffective assistance of counsel.

**{¶26}** Appellant argues counsel failed to object to out of court statements on the basis of violation of the Confrontation Clause. For the reasons stated in our discussion of Assignment of Error One earlier in this opinion, Appellant has not demonstrated the result of the proceeding would have been different had counsel objected.

**{¶27}** Appellant argues counsel asked a series of questions on cross-examination of Deputy Hamilton which allowed him to continue to testify concerning out of court statements. At this point in the trial, the objection to the admission of the statements on the basis of hearsay had been overruled. Trial counsel's decision to cross-examine a witness and the extent of such cross-examination are tactical matters. *State v. Diaz*, 9th Dist. Lorain No. 04CA008573, 2005–Ohio–3108, ¶ 26. As such, decisions regarding

cross-examination cannot form the basis for a claim of ineffective assistance of counsel. *Id.* Appellant has not demonstrated counsel was ineffective in the cross-examination of Deputy Hamilton.

**{¶28}** Appellant argues counsel should have objected when deputy Hamilton was asked about Appellant "fleeing" the scene, as there was no evidence to suggest he fled the scene. On redirect examination, the following colloquy occurred:

Q. Okay. You were asked if Mr. Garrison was at the scene when you arrived. Do you remember that question?

A. Yes.

Q. Do you have past experience with perpetrators of a crime fleeing the scene?

A. Yes, it's common for individuals, or I should say suspects to leave prior to our arrival.

Tr. 142.

**{¶29}** The evidence is undisputed Appellant was not at the scene when the deputies arrived, and we find counsel was not ineffective for failing to object to this testimony.

**{¶30}** Next Appellant argues counsel was ineffective in opening the door to admission of the statements of Brian Hohnwald by asking Deputy Williams if anyone he spoke to told him they witnessed physical interaction between Garrison and Dickinson.

Tr. 156. However, from this line of questioning, counsel procured testimony which demonstrated no one told the officer they saw Appellant strike Dickinson with a box, nor did they see Appellant throwing the box or holding the box in his hands. Tr. 157. Although Hohnwald's statement indicated he witnessed a physical altercation between Garrison and Dickinson, his statement to Williams was the box fell to the floor, contradicting Dickinson's statement Garrison struck her with the box. Tr. 158. Appellant has not demonstrated ineffective assistance of counsel in opening the door to the statement of Hohnwald, which in large part aided the defense.

{¶31} Appellant argues counsel should have objected to Williams's testimony Hohnwald told him Appellant kicked the door in. This testimony was cumulative of Dickinson's statement to Hamilton. Further, the deputies personally witnessed the damage to the door. Appellant has not demonstrated the outcome of the trial would have been different in the absence of this statement by Hohnwald.

{¶32} Appellant argues counsel should have continued to object to the prosecutor's characterization of the evidence regarding "fleeing" and Appellant's intent to "confront" Wilt at the residence. As discussed earlier, the evidence is undisputed Appellant left the scene after the incident. Further, although Appellant told police his intent was to talk to Wilt "man-to-man" for purposes of "peacekeeping," the jury could infer from all the evidence in the case and the circumstances surrounding Appellant's decision to go to Dickinson's apartment that his intent was in fact to confront Wilt concerning his relationship with Dickinson.

{¶33} Appellant argues counsel erred in failing to object to the court instructing the jury they could consider fleeing as evidence of guilt. Again, as discussed throughout

this opinion, the evidence was undisputed Appellant left the scene after the confrontation with Dickinson. Appellant has not demonstrated a reasonable probability that in the absence of this instruction he would have been acquitted.

{¶34} Finally, Appellant argues counsel was ineffective in failing to request lesser-included offense instructions. A trial court is required to instruct on a lesser-included offense only where the evidence at trial would reasonably support both an acquittal on the crime charged and a conviction upon the lesser-included offense. *State v. Deanda*, 136 Ohio St.3d 18, 2013–Ohio–1722. Appellant has failed to specify which lesser-included offenses he believes were demonstrated by the evidence, and has therefore not demonstrated ineffective assistance of counsel.

{¶35} The second assignment of error is overruled.

III.

{¶36} In his third assignment of error, Appellant argues his conviction of aggravated burglary is against the manifest weight of the evidence.

{¶37} In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins,* 78 Ohio St.3d 380, 387, 1997–Ohio–52, 678 N.E.2d 541, quoting *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1983).

{¶38} Appellant was convicted of aggravated burglary in violation of R.C. 2911.11(A)(1):

"(A) No person, by force, stealth, or deception, shall trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense, if any of the following apply:

(1) The offender inflicts, or attempts or threatens to inflict physical harm on another[.]"

**{¶39}** Appellant argues the evidence does not demonstrate he entered the apartment with purpose to commit a criminal offense, and further does not demonstrate he inflicted physical harm, or attempted or threatened to inflict physical harm.

**{¶40}** While Appellant argues he went to the apartment to see Wilt for peacekeeping purposes, from all the other evidence presented the jury could infer his intention when he entered the apartment was to commit a criminal offense against Wilt, the new boyfriend of Appellant's former girlfriend. While he told Deputy Hamilton he simply wanted to talk man-to-man with Wilt, who was a friend, he also commented to Hamilton Dickinson's "vagina was a revolving door," from which the jury might infer Appellant was angry about her relationship with Wilt despite his claim of peacekeeping. Tr. 125. Appellant was free on bond after an arrest for domestic violence against Dickinson, and a condition of his bond was he was to not have contact with her. Appellant admitted Dickinson did not want him to enter the apartment. There was evidence

presented he pushed past Dickinson to get to Wilt, with Dickinson ultimately pushing him out of the apartment, locking the door behind him. The State presented evidence he kicked the door, damaging the door frame. From all of this evidence, we do not find the jury lost its way in concluding Appellant entered the apartment with purpose to commit a criminal offense.

**{¶41}** Appellant also argues because the jury found him not guilty of domestic violence, they rejected the testimony he struck Dickinson with the box of marbles, and therefore the finding he inflicted, or attempted or threatened to inflict, physical harm is against the manifest weight of the evidence.[1]

**{¶42}** R.C.2929.25(A) defines the offense of domestic violence, "No person shall knowingly cause or attempt to cause physical harm to a family or household member." Household member is defined by R.C.2929.25(F):

> (F) As used in this section and sections 2919.251 and 2919.26 of the Revised Code:
>
> (1) "Family or household member" means any of the following:
>
> (a) Any of the following who is residing or has resided with the offender:
>
> (i) A spouse, a person living as a spouse, or a former spouse of the offender;

---

[1]Seeming inconsistency between verdicts on two different charges is not a basis for reversal. *State v. Gapen*, 104 Ohio St.3d 358, 2004-Ohio-6548, 819 N.E. 2d 1047, ¶138.

(ii) A parent, a foster parent, or a child of the offender, or another person related by consanguinity or affinity to the offender;

(iii) A parent or a child of a spouse, person living as a spouse, or former spouse of the offender, or another person related by consanguinity or affinity to a spouse, person living as a spouse, or former spouse of the offender.

(b) The natural parent of any child of whom the offender is the other natural parent or is the putative other natural parent.

(2) "Person living as a spouse" means a person who is living or has lived with the offender in a common law marital relationship, who otherwise is cohabiting with the offender, or who otherwise has cohabited with the offender within five years prior to the date of the alleged commission of the act in question.

**{¶43}** Appellant argued in his Crim. R. 29 motion for a directed verdict of acquittal and in closing argument the evidence was insufficient to establish Dickinson was a household or family member, as the only evidence with regard to the issue was Hamilton's testimony the last name of Dickinson's two children is Garrison, nor was there evidence Appellant previously resided with Dickinson. Tr. 169-170, 196-197. Therefore, the record does not affirmatively demonstrate the jury did not believe Dickinson's statement Appellant struck her in the face with a box of marbles. Further, Hamilton testified after denying knowing how the box was damaged, Appellant mentioned helping Dickinson pick up the marbles, which Hamilton found odd. Tr. 126. Based on the evidence Appellant

struck Dickinson with a box of marbles while inside the evidence, the jury's finding Appellant inflicted or attempted to inflict physical harm on Dickinson while inside the residence is not against the manifest weight of the evidence.

**{¶44}** The third assignment of error is overruled.

IV.

**{¶45}** Appellant argues the court erred in sentencing him to the maximum sentence of eleven years incarceration.[2]

**{¶46}** R.C. 2953.08(G)(2) sets forth the standard of review for all felony sentences. *State v. Marcum*, 146 Ohio St.3d 516, 2016–Ohio–1002, ¶ 1. When hearing an appeal of a trial court's felony sentencing decision, "[t]he appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing." R.C. 2953.08(G)(2).

**{¶47}** Pursuant to R.C. 2953.08(G)(2), an appellate court may only "increase, reduce, or otherwise modify a sentence * * * or may vacate the sentence and remand the matter to the sentencing court for resentencing" if the court finds by clear and convincing evidence "(a) [t]hat the record does not support the sentencing court's findings[,]" or "(b) [t]hat the sentence is otherwise contrary to law." R.C. 2953.08(G)(2)(a)-(b). "An appellate court will not find a sentence clearly and convincingly contrary to law where the trial court considers the principles and purposes of R.C. 2929.11, as well as the factors listed in

---

[2] While Appellant's assignment of error is framed to include error in consecutive sentencing, in the body of his argument he makes no argument regarding the imposition of the sentence consecutive to his separate conviction, and we therefore do not address the propriety of consecutive sentences in the instant case.

R.C. 2929.12, properly imposes postrelease control, and sentences the defendant within the permissible statutory range." *State v. Ahlers,* 12th Dist. Butler No. CA2015–06–100, 2016–Ohio–2890, ¶ 8, *citing State v. Moore*, 12th Dist. Clermont No. CA2014–02–016, 2014–Ohio–5191, ¶ 6.

**{¶48}** Under R.C. 2929.11(A), the "overriding purposes" of felony sentencing are to protect the public from future crime by the offender and others and to punish the offender using the minimum sanctions the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources. To achieve these purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both. R.C. 2929.11(A).

**{¶49}** R.C. 2929.12 lists general factors which must be considered by the trial court in determining the sentence to be imposed for a felony, and gives detailed criteria which do not control the court's discretion but which must be considered for or against severity or leniency in a particular case. The trial court retains discretion to determine the most effective way to comply with the purpose and principles of sentencing as set forth in R.C. 2929.11. R.C. 2929.12.

**{¶50}** Among the various factors that the trial court must consider and balance under R.C. 2929.12 are: (1) serious physical, psychological, or economic harm to the victim as a result of the offense; (2) whether the offender has a history of criminal convictions; (3) whether the offender has not responded favorably to sanctions previously

imposed by criminal convictions; and (4) whether the offender shows genuine remorse for the offense. R.C. 2929.12.

**{¶51}** R.C. 2929.11 and 2929.12 require consideration of the purposes of felony sentencing, as well as the factors of seriousness and recidivism. *See State v. Mathis*, 109 Ohio St.3d 54, 846 N.E.2d 1, 2006–Ohio–855, ¶ 38.

**{¶52}** In the judgment of sentence, the trial court recited it had considered the principles and purposes of felony sentencing under R.C. 2929.11, and the balance of seriousness and recidivism factors under R.C. 2929.12.  At the sentencing hearing, the court stated:

> The Court would note for the record that you are currently serving a sentence on a domestic violence where you were convicted in November of last year.  You were out on bond on that case at the time you committed this case, and you committed that case while you were on community control out of another county.
>
> The Court would also note that in 2011, you had a criminal conviction for nonsupport which is the one that you were still – hadn't reported.  There were several times that you were jailed during that case.  There was also a 2001 case for two counts of domestic violence.  Everything else you were found not guilty which was the intimidation of a witness, the burglary, and the child endangering.  You were found not guilty.  The PSI reflects it now and reflected it back then as that way.

The Court would also note, in that particular case, you were – had a number of probation violations and eventually were revoked and sent to prison.

Back in '95, you had a trafficking case which ended up in three probation violations and eventually revoked and sent to prison. You also have had numerous misdemeanors over the years, and you've gone to trial on one domestic violence which was a misdemeanor and was found not guilty. You have a history of being able to do that. And another one dismissed. Another one dismissed. Criminal mischief, not guilty at trial. Public intox, criminal damaging, assault, not guilty at trial. Assault, criminal damaging, assault – two counts of assault and another assault.

Upon reviewing all that and the fact that you were out on bond at the time you committed this offense, the Court finds that you should have known better than even being close to there. You've been through this so many times you would think you would learn something along the way.

Sent. Tr. 6-7.

{¶53} Appellant argues the court erred in considering offenses on which he had been acquitted. However, Appellant's assertion is not supported by Ohio law:

[I]t is well established in Ohio law that the court may consider information beyond that strictly related to the conviction offense. For

example, the statute governing the contents of a PSI report simply says, "[T]he officer making the report shall inquire into the circumstances of the offense and the criminal record, social history, and present condition of the defendant." R.C. 2951.03(A). The statutory directive no doubt results in the sentencing court considering evidence that would be inadmissible at trial, *State v. Davis* (1978), 56 Ohio St.2d 51, 10 O.O.3d 87, 381 N.E.2d 641—like hearsay—and results in the court considering evidence entirely unrelated to the conviction offense. *See Gregg v. United States* (1969), 394 U.S. 489, 492, 89 S.Ct. 1134, 22 L.Ed.2d 442. So, the court may consider the offender's prior arrests, even if none yields prosecution. *Burton* at 23, 6 O.O.3d 84, 368 N.E.2d 297 ("it is well-established that a sentencing court may weigh such factors as arrests for other crimes"). The court may also consider facts that support a charge of which the offender is ultimately acquitted. *State v. Wiles* (1991), 59 Ohio St.3d 71, 78, 571 N.E.2d 97, *quoting United States v. Donelson* (C.A.D.C.1982), 695 F.2d 583, 590 (" 'It is well established that a sentencing judge may take into account facts introduced at trial relating to other charges, even ones of which the defendant has been acquitted' ").

The court may even consider mere allegations of crimes for which the offender is never prosecuted. *State v. Cooey* (1989), 46 Ohio St.3d 20, 35, 544 N.E.2d 895 (allegations of uncharged criminal conduct found in a PSI report may be considered as part of the offender's social history).

*State v. Riggleman*, 5th Dist. Licking No. 14-CA-17, 2014-Ohio-5369, ¶ 17, *quoting*

*State v. Bowser,* 186 Ohio App.3d 162, 2010–Ohio–951, 926 N.E.2d 714(2nd Dist

Montgomery), ¶ 15.

**{¶54}** The record reflects Appellant has an extensive criminal history, and has not responded favorably to criminal sanctions in the past as demonstrated by his history of probation violations. Further, he was on bond for a separate offense involving the same victim at the time he committed the instant offense, and he was on community control at the time of the commission of that offense. We do not find by clear and convincing evidence "that the record does not support the sentencing court's findings," or "that the sentence is otherwise contrary to law." R.C. 2953.08(G)(2)(a)-(b).

**{¶55}** The fourth assignment of error is overruled.

**{¶56}** The judgment of the Muskingum County Common Pleas Court is affirmed.

By: Hoffman, J.

Gwin, P.J. and

Wise, Earle, J. concur